CERTIFIED COPY

A True Copy
Teste:



_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 08-2467 & 08-2595

ALEJANDRO DURAN, et al.,

*Plaintiffs-Appellees/*
*Cross-Appellants,*

*v.*

TOWN OF CICERO, ILLINOIS,

*Defendant-Appellant/*
*Cross-Appellee,*

and

DINO VITALO and WILLIAM PESLAK,

*Defendants-Appellees.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 6858—**John F. Grady**, *Judge.*

ARGUED FEBRUARY 17, 2010—DECIDED AUGUST 9, 2011

Before RIPPLE, MANION, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*.  These appeals come to us following a complex jury trial in a lawsuit brought by scores of individual plaintiffs against 17 police officers and the Town of Cicero, Illinois, alleging federal civil-rights violations and various state-law torts. The claims arose out of an ugly confrontation between officers of the Cicero police force and nearly 100 partygoers—most of Mexican descent—who were celebrating a baptism at a Town of Cicero home. Responding to neighborhood complaints about the party, officers arrived on the scene and first attempted to quiet and later to disperse the crowd. Some of the revelers objected to these efforts, and after a period of escalating tension between police and the party guests, a full-blown melee ensued. By night's end many people—officers and civilians alike—were injured, and seven people were placed under arrest.

In the wake of this incident, 78 of the partygoers filed suit against 17 officers and the Town alleging a raft of federal and state causes of action, including claims under 42 U.S.C. § 1983 for use of excessive force, false arrest, and deprivation of equal protection, and state-law tort claims for battery, malicious prosecution, hate crimes, and evidence spoliation. Complicating matters, different plaintiffs pursued different claims against various combinations of individual named officers, unidentified officers, and the Town. Needless to say, trying this unwieldy case presented many challenges. The trial took six weeks, and in the end the jury returned sizable verdicts in favor of 23 of the plaintiffs

against six of the individual officers and the Town. The district court entered judgment on the verdicts, but the judgment appears to permit 13 of the 23 successful plaintiffs to recover twice for the same injury on their state-law claims—once from the individual officer who was found liable and again from the Town. The Town filed a timely motion under Rule 59(e) of the Federal Rules of Civil Procedure to correct this error, but the district court denied the motion. The Town appealed, and the plaintiffs cross-appealed on a handful of evidentiary issues.

The Town's objection to the judgment is well-taken; the Town's liability for the state-law claims against its officers is based on respondeat superior and is therefore joint and several. The judgment does not reflect this and thus can be read to permit double recovery. As we will explain, this error flowed from confusing jury instructions and an improperly crafted special-verdict form. We reverse and remand with instructions to amend the relevant portions of the judgment. We reject the arguments raised in the plaintiffs' cross-appeal. The challenged evidentiary rulings do not reflect an abuse of discretion.

## I. Background

### A. Town of Cicero Police Forcibly Break Up a Boisterous Party

On September 2, 2000, Alejandro and Maria Duran hosted a party at their Town of Cicero home in honor of their daughter's baptism. At its peak there were close

to 100 guests at this event. During the course of the eve-
ning, the Cicero Police Department received two
separate telephone complaints from neighbors upset
about the party. The police response to the second call
was tense and eventually turned violent.

Officer Robert DeCianni was dispatched to the Duran
home to deal with the second call. He had been there
only moments earlier to handle the first complaint
about improperly parked cars. Almost as soon as
DeCianni approached the front yard, he found himself
embroiled in a heated verbal exchange with partygoers
who were celebrating outside the home. The source of
this tension was disputed at trial. According to testimony
from some of the plaintiffs, DeCianni was in a foul and
belligerent mood as soon as he reappeared on the scene.
Using racially insensitive language interspersed with
profanity, he crudely ordered the Durans to shut the
party down. In contrast, under the Town's version of
events, the party guests were initially hostile and com-
bative toward DeCianni.

Both sides agree that the situation soon became com-
pletely unmanageable. DeCianni called for backup, and
as the verbal jousting intensified, even more reinforce-
ments were requested. Within several minutes, Cicero's
entire on-duty police force was present outside the
Duran home, accompanied by members of neighboring
police departments. The name-calling and agitation per-
sisted on both sides. The officers amassed outside the
Duran home eventually entered the property through
the front gate. Again, the rationale for this decision

Nos. 08-2467 & 08-2595                                          5

was disputed at trial. The officers claimed they were attempting to arrest Gonzalo Duran, Alejandro's brother, for throwing a beer bottle at DeCianni. The plaintiffs maintain that the officers' actions were animated by antipathy against the party guests based on their Mexican descent.

Whatever the cause, the police presence on the Duran property was inflammatory, and a violent melee broke out almost immediately. The police used pepper spray, night sticks, and other forms of physical force to subdue combative partygoers and compel the rest to move indoors. The 78 plaintiffs in this case—including men, women, and children—claimed they suffered various injuries at the hands of the police. At least five police officers received medical treatment for bites and bruises sustained in the altercation. Seven of the plaintiffs here—Alejandro Duran, Armando Duran, Adolfo Duran, Gonzalo Duran, Joel Uribe, Heriberto Uribe, and Juan Carlos Uribe—were arrested. Juan Carlos Uribe was released without being charged. Misdemeanor complaints were issued against Heriberto and Joel Uribe for obstructing a peace officer, but these charges were never prosecuted. The four Duran brothers were prosecuted on charges of battery and obstructing or resisting a peace officer; they were acquitted by a jury.

## B. The Litigation

As we have noted, 78 of the partygoers filed suit against 17 individual officers and the Town of Cicero. The complaint accused the individual defendants of various

constitutional violations under 42 U.S.C. § 1983 (excessive force, due process, equal protection, and false arrest) and several intentional torts under Illinois law (malicious prosecution, battery, hate crimes, and intentional infliction of emotional distress). The complaint also alleged that the Town was liable under § 1983 for maintaining a policy of indifference to the use of excessive force by its officers, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and also for spoliation of evidence (more about this in a moment). In addition, the plaintiffs claimed that the Town was vicariously liable under the doctrine of respondeat superior for the state-law torts committed by its officers.

The Town's role in this case became needlessly complicated and warrants further explanation. Prior to trial the Town formally waived its right to contest its liability under § 1983 and stipulated to the entry of judgment in the nominal amount of $1.00 in favor of any plaintiff who prevailed against an individual defendant on any federal claim. The district court accepted this stipulation, which made it unnecessary to submit the *Monell* policy claim to the jury. Also before trial the district court entered an order that the evidence-spoliation claim would be tried after the jury had rendered its verdicts on all of the other claims. The rationale for this sequential approach was that the spoliation claim might not need to be tried at all based on the jury's verdicts on the other claims. Finally, the Town conceded that all of the individual officers were acting within the scope of their employment during the altercation at the Duran home. This concession amounted to a stipulation that the Town

Nos. 08-2467 & 08-2595                                    7

would be jointly and severally liable under principles of respondeat superior for any judgment entered against any individual officer on any of the state-law claims. But the Town's conceded vicarious liability extended even further. Some of the plaintiffs were pursuing state-law tort claims against *unidentified officers*—either alone or in addition to their claims against specifically identified officers. The Town accepted respondeat superior liability for any torts committed by unnamed officers as well.

Understandably, the sheer enormity and factual complexity of this case posed many challenges for the district court. The parties tried to streamline presentation of the case by providing a customized chart to serve as a reference for the jury throughout the trial. The chart listed all the individual plaintiffs vertically on the left-hand side and all of the claims horizontally across the top. If a plaintiff made a specific claim against a particular defendant, that defendant's initials were written in the appropriate box created by this grid. On this visual depiction of the claims, many boxes on the chart contained multiple initials and others were left completely blank. For reasons unknown, although the Town's liability had been stipulated, one of the claims listed on the horizontal axis of the grid was the "Town of Cicero Claim."

The trial itself focused on the eyewitness testimony of the plaintiffs and the police officers who were present at the Duran home on the evening of the baptismal party. The plaintiffs also presented two video recordings to the jury. The first video—shot by Luis Castaneda, a professional videographer hired by the Durans to record the

8                                           Nos. 08-2467 & 08-2595

baptism and party—captured some of the initial alter-
cation, but its overall usefulness was limited by the
fact that it was confiscated by a police officer just
before the verbal confrontation turned physical. The
other video—shot by Onofre Barajas, a neighbor of the
Durans—displayed some of the physical altercation, but
its effectiveness was hampered by the poor quality of
the footage. The plaintiffs also claimed there was a third
video—one shot by Eduardo Gudino, another neighbor
of the Durans—that most fully corroborated their
account of police brutality. Gudino testified that when
the police noticed he was videotaping the altercation,
they chased him down, beat him, and forcibly confiscated
his camera and videotape. Although Castaneda's video-
tape was returned, Gudino's was not; these two tapes
formed the basis of the plaintiffs' spoliation claim.
Gudino also filed a separate lawsuit based on the forcible
confiscation of his camera and videotape, which was
tried with the plaintiffs' spoliation claim.

    After six weeks of trial on all claims except those
relating to the confiscated videotapes, the case was sub-
mitted to the jury. The jury instructions were confusing
and the special-verdict form was flawed, for reasons we
will later explain. For now, it is enough to say that the
court submitted the claims against the Town to the jury
under an umbrella heading of "state law claims against
the Town of Cicero," and the jury was asked to assess
damages separately against the Town—even though the
Town's liability had been stipulated and was wholly
vicarious to that of the officers.

The jury returned verdicts in favor of 23 of the 78 plain-
tiffs against some of the officers and the Town.
Judgment was entered on the verdicts, paving the way
for trial on the evidence-spoliation claims and Gudino's
claim based on the forcible confiscation of his camera.
The defendants moved to exclude the confiscation of
Castaneda's videotape from consideration as evidence
of spoliation; they argued that under Illinois law, pre-
venting the *creation* of evidence is not actionable as a
failure to *preserve* evidence. The court granted the motion,
which shortened this final phase of the proceedings.
Trial on the spoliation claim was completed in just a day,
and that evening the jury returned a verdict in favor of
Gudino and some of the plaintiffs.[1]

At this point the defendants noticed that the judg-
ment entered the previous day might impermissibly
allow some of the prevailing plaintiffs to secure a
double recovery. As we have noted, because the special-
verdict form asked the jury to award damages separately
against the Town and any officer found liable on any of
the state-law claims, the judgment reflected that 13 of
the plaintiffs received separate awards—against indi-
vidual police officers *and* the Town—for the same under-
lying injury. In an effort to prevent what it called "double
counting," the Town timely filed a motion to amend
the judgments pursuant to Rule 59(e) of the Federal
Rules of Civil Procedure. The district court denied this
motion; the court said the Town had waived its argument

---

[1] The judgment in favor of Gudino is not at issue on appeal.

about joint and several liability. The Town appealed, and the plaintiffs filed a cross-appeal challenging several of the district court's trial rulings.

## II. Discussion

The Town's appeal challenges only the district court's denial of its Rule 59(e) motion to amend the judgments. The plaintiffs' cross-appeal raises three issues. First, the plaintiffs contend that the district court erred in excluding the confiscation of the Castaneda videotape as a basis for their evidence-spoliation claim under Illinois law. They also object to the district court's exclusion of certain evidence regarding two of the defendant officers—specifically, prior complaints of misconduct filed against Officer Dino Vitalo, and Officer William Peslak's unrelated civil-rights conviction under 18 U.S.C. § 242.

### A. The Town's Appeal

The Town renews the substance of its Rule 59(e) request to amend the judgment to reflect that the Town and its officers are jointly and severally liable for the damages awarded to each plaintiff who prevailed on a state-law claim. Resolving this issue requires us to identify some fundamental missteps in the way these claims were submitted to the jury.

From the beginning, the plaintiffs sought to hold the Town liable on the state-law tort claims under the doctrine of respondeat superior. That is, the Town would be

vicariously liable for the torts of its officers if their actions were undertaken within the scope of their employment. *See Adames v. Sheahan*, 909 N.E.2d 742, 754 (Ill. 2009). Before trial the Town stipulated that its officers were acting within the scope of their employment during the altercation at the Duran home. As a result there were no factual issues for the jury to decide in connection with the Town's liability on the state tort claims. Based on the scope-of-employment stipulation, the Town would be liable to any plaintiff who prevailed against an individual officer on any of the state tort claims. This liability would be joint and several, not cumulative; the Town and the individual officer would be jointly and severally liable for whatever sum of money the jury awarded as damages to compensate any individual prevailing plaintiff for his injury. That is, if any officer was found liable to an individual plaintiff, the Town's vicarious liability would flow as a matter of law from its pretrial stipulation, but jointly and *to the extent* of the officer's liability, not for an additional amount. Accordingly, the issue of the Town's liability should not have been submitted to the jury *at all*; once the Town entered its stipulation on the scope-of-employment issue, its liability became solely a postverdict legal matter for the court.

In Illinois, as elsewhere, a plaintiff may "receive only one full compensation for his or her injuries, and double recovery for the same injury is not allowed." *Thornton v. Garcini*, 928 N.E.2d 804, 811 (Ill. 2010). Although the jury instructions alluded to this principle, they did so in a way that sowed confusion, and this confusion was

compounded by the special-verdict form. In relevant part the jury was instructed as follows:

> The defendant Town of Cicero is legally responsible for the acts of its employees committed within the scope of their employment. The town agrees that the defendant police officers were acting within the scope of their employment by the Town, and therefore, if you find in favor of a plaintiff and against any of the defendant officers on any of the state law claims, the amount of damages that you award the plaintiff against that individual defendant should also be awarded against the defendant Town. *This does not mean that the plaintiff would receive a double recovery; it simply means that the individual defendant and the Town would be jointly liable for the amount of your verdict against the individual defendant.*

(Emphasis added.). This instruction was perplexing. Why was the jury being asked to assess damages against individual officers *and* the Town for the same injury? The jury was obviously confused. During deliberations, the foreman sent the following question to the district judge:

> Dear Judge—In awarding compensatory damages, if we find in favor of the plaintiff under multiple state law claims, is the town liable for half of the total amount? Here's an example of how we understand it:

> Find in favor of Plaintiff A on State Law Claim #1 and State Law Claim #2. And we feel it should be a <u>total of $30</u>. With us feeling that $20 on State Law Claim #1 & $10 on State Law Claim #2, would we find State Law Claim for Defendant Claim #1 → $10 +

Nos. 08-2467 & 08-2595                                    13

> Defendant on Claim #2 → $5 + Town $15 = $30.
> Thanks—The Jury. Jeffrey Hansen 2/14/08 11:40 a.m.

The judge responded by restating the instruction we have just quoted, followed by this:

> Now, let me turn to your specific question that you wrote out. The answer is you return a verdict against the town for $30, because that is the total of the two amounts that you have returned for that plaintiff against that defendant on two separate claims. You don't assess the town half of the amount. You assess the town 100 percent of the amount.

> *And the town is jointly liable.* It's not liable in addition to the individual defendants for the same amount so that you guys could be talking about $60. No. It's only $30, but you have two defendants responsible to pay it, one, the individual defendant, and two, the town.

(Emphasis added.)

There are two problems with this approach. First, as we have noted, once the Town conceded that its officers were acting within the scope of their employment, the Town's liability on the state tort claims became a postverdict legal issue for the court; the jury should not have been asked to answer any questions about the Town's liability in the first place. Moreover, damages are not assessed "by defendant" or "by claim" but "for" an injury. *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 315-16 (7th Cir. 2010) (Sykes, J., dissenting). Where a plaintiff has suffered a single, indivisible injury (as is ordinarily

the case and was true here on each of the state tort claims), the jury's task is to award a sum of money to compensate the plaintiff for that injury, *not* to enter a damages award against each defendant who is or will be liable on the judgment. *Id.* Complicating an already difficult case, here the jury was asked to determine damages on a defendant-by-defendant basis and also separately for the Town. This was error, and it led directly to the problem of double recovery belatedly identified by the Town.

It is true the Town itself proposed the flawed special-verdict form. It is equally true, however, that everyone—the court *and* all the parties—proceeded on the understanding that the Town's liability on the state-law claims was vicarious only, and knew that the Town would be jointly liable for the damages awarded to any individual plaintiff on any of the state-law claims, *not* for an additional amount. Thus, although the jury was (mistakenly) instructed to enter separate damages awards "against" individual officers *and* "against" the Town, it was also told that the same amount awarded against any individual officer should also be awarded against the Town. The judge advised the jury that this would not result in double recovery, but instead the officer and the Town would be jointly liable for a single damages award on each claim. No wonder the jury was confused; on the matter of the Town's liability, it was asked to engage in a pointless enterprise.

Here are the resulting awards on the state-law claims:

| Plaintiff (Column A) | Compensatory Damages Awarded Against Individual Officers (Column B) | Compensatory Damages Awarded Against the Town (Column C) |
|---|---|---|
| Alejandro Duran | $575,000 | $675,000 |
| Adolfo Duran | $585,000 | $585,000 |
| Anna Maria Duran | $100,000 | $100,000 |
| Gonzalo Duran | $120,000 | $120,000 |
| Luz Maria Pineda | $40,000 | $40,000 |
| Ignacio Rodriguez | $100,000 | $100,000 |
| Javier Rodriguez | $25,000 | $25,000 |
| Ruben Pineda | $75,000 | $100,000 |
| Joel Uribe | $25,000 | $25,000 |
| Heriberto Uribe, Sr. | $25,000 | $25,000 |
| Juan Carlos Uribe | $25,000 | $25,000 |
| Silvia Pineda | $25,000 | $25,000 |
| Armando Duran | $25,000 | $25,000 |
| Amada Duran | — | $40,000 |
| Daniel Pineda | — | $15,000 |
| Alma Rodriguez | — | $10,000 |

| | | |
|---|---|---|
| Kathy Bonilla | — | $10,000 |
| Maria Concepcion Duran | — | $100,000 |
| Juana Maribel Escareno | — | $12,500 |
| Jose Refugio Paredes | — | $25,000 |
| Amanda Paredes | — | $10,000 |
| Jose Paredes | — | $10,000 |
| Juana Soto Uribe | — | $50,000 |

The dashes appearing in Column B reflect the state-law claims against unidentified officers for injuries suffered by the plaintiffs listed in Column A. (Recall that the Town had accepted vicarious liability for the torts of the unidentified officers when it stipulated that all of its officers were acting in the scope of their employment.) The proper way to submit the state-law claims to the jury would have been to ask the liability questions first using "John Doe Officer" or a similar designation to determine the liability of the unnamed officers. Then the jury should have been asked to enter a single damages award to compensate each plaintiff for his or her injury, *not* to enter separate damages awards "against" each defendant—whether an individual officer or the Town.

Although the verdict form was flawed, it appears that the jury tried to comply with the court's specific instruc-tion that the amount awarded against any individual officer should also be awarded against the Town. This can be inferred from the fact that 11 of the 13 plaintiffs

who had claims against identified officers (these 13 plain-
tiffs are listed in bold) received a compensatory-damages
award against an individual officer (Column B) and the
Town (Column C) in exactly the same amount. For two
of these plaintiffs, however, the award in Column C is
greater than the award in Column B. For example,
Alejandro Duran received a damages award of $550,000
on his malicious-prosecution claim against Officer
Michael McMahon and another $25,000 on his emotional-
distress claim against Officer Walter Wirack. This total
of $575,000 is reflected in Column B, yet the jury
awarded him $675,000 against the Town. The likely
explanation for this extra $100,000 is that the jury was
awarding compensation for a separate injury Alejandro
Duran suffered at the hands of an unidentified officer.[2]
Moreover, ten plaintiffs (the ones not listed in bold)
received damages awards against the Town despite not
having prevailed against an individually named officer.
Because the Town's liability is derivative, the jury was
obviously compensating these ten plaintiffs on claims
for injuries they suffered at the hands of unidentified
officers.

   Given the confusing verdict form and instructions,
the jury should be commended for managing as well as
it did. The judgment entered on the verdicts, however, did
not reflect the joint and several nature of the Town's
liability. For example, on plaintiff Javier Rodriguez's

---

[2] Ruben Pineda was the only other plaintiff who received
a greater amount in Column C than in Column B.

battery claim, the district court entered judgment in favor of Rodriguez and against Officer Peslak in the amount of $25,000, and in favor of Rodriguez against the Town in the amount of $25,000, without any mention that this liability is joint and several. This appears to permit Rodriguez to recover twice—once from the Town and once from Peslak—for the same injury.

A motion to alter or amend a judgment under Rule 59(e) may be granted to correct a manifest error of law or fact. *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). A judgment that can be read to allow a plaintiff to recover twice for the same injury contains a manifest error of law. The Town's Rule 59(e) motion proposed nothing more than an obvious fix for a glaring double-recovery problem in the judgment.[3]

In denying the Rule 59(e) motion, the district court held that the Town had waived any right to relief by not objecting at trial to the verdict form or jury instructions that gave rise to the confusing judgment. This waiver rationale misses the point. True, the Town bears some responsibility for the flawed special-verdict form. Still, "it's the judge's responsibility to get the verdict form right, not just pick one side's proposal or the other's."

---

[3] As an alternative, the Town might have filed a Rule 60(b)(5) motion to account for the double-recovery problem. After paying the $25,000 award to Javier Rodriguez (for example), the Town might have filed a Rule 60(b)(5) motion for relief from any further obligation to Rodriguez based on satisfaction of the judgment.

*Thomas*, 604 F.3d at 315 (Sykes, J., dissenting). In any event, the Town's Rule 59(e) motion was directed at a legal error in the judgment (not the verdict form), and here there can be no principled disagreement that the judgment fails to reflect what everyone understood from the beginning: that the Town would be *jointly* liable (if liable at all) to any plaintiff who prevailed on a state tort claim against an individual officer, whether identified or unidentified. The Town did not waive this legal point about the nature of its liability. The Town's timely Rule 59(e) motion identified a manifest error of law that surfaced only after judgment was entered. *See Cnty. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 819 (7th Cir. 2006).

Beyond defending the court's misplaced waiver rationale, the plaintiffs advance one other argument for leaving the judgment as is. They cite *Zivitz v. Greenberg*, 279 F.3d 536, 540 (7th Cir. 2002), for the proposition that double recovery should not be presumed where the jury could reasonably have based its verdict on separate injuries sustained by the plaintiff. The plaintiffs suggest that the jury might have intended *all* the awards listed above in Column C to represent damages awarded to the prevailing plaintiffs for torts committed by unidentified police officers. There is nothing in the record to support this interpretation of the jury's verdict. To the contrary, the jury was specifically instructed that the amount of damages it assessed against any individual officer must also be assessed against the Town; we assume that the jury followed this instruction. *See Laxton v. Bartow*, 421 F.3d 565, 573 (7th Cir. 2005) ("We must

presume that the jury followed all the instructions it was given."). The verdict reflects that the jurors followed this guidance. The surest indication of this is the fact that with two exceptions, every plaintiff who received an award against an individual named officer on a state-law claim (reflected in Column B) received an award against the Town (reflected in Column C) in an identical amount as that awarded against the individual officer. Where the award against the Town is higher, or where a plaintiff received an award against the Town but not an individual officer, the logical inference is that the difference reflects compensation for an injury inflicted by an unidentified officer. Given how this case was submitted to the jury, this is the only sensible way to interpret the verdict.

In sum, it is reasonably clear what the jury did—or at least what it was trying to do. And it is abundantly clear that the judgment must be amended to avoid the possibility of double recovery. On remand the court should clarify that the damages the jury assessed against the Town and the individual officers are not to be aggregated; the judgment should reflect that the Town is jointly liable for a single damages award in favor of each plaintiff who prevailed on a state-law claim.

## B. Plaintiffs' Cross-Appeal

In their cross-appeal the plaintiffs challenge three rulings the district court made during trial: (1) the court's decision to exclude the Castaneda videotape as a basis for the evidence-spoliation claim; (2) the exclusion of

misconduct complaints against Officer Vitalo under
Rule 404(b); and (3) the exclusion of Officer Peslak's
unrelated civil-rights conviction. We address each of
these rulings in turn.

### 1. Spoliation of Evidence

After the jury returned its verdict on the federal civil-
rights claims and most of the state tort claims, the plain-
tiffs were then in a position to proceed with their cause
of action for spoliation of evidence. Because some of the
defendants prevailed on claims that arguably could have
gone the other way, the plaintiffs could argue that the
result might have been different had certain evidence
not been destroyed. They were allowed to argue that the
disappearance of the allegedly incriminating videotape
shot by Eduardo Gudino (the Durans' neighbor) and
confiscated by the officers was actionable as tortious
spoliation of evidence. However, they also sought to
include the video taken by Luis Castaneda as part of
their spoliation claim. Castaneda, it will be remembered,
was the professional videographer hired by the Durans
to record the baptism and party. The plaintiffs alleged
that Castaneda was wrongfully forced to turn over
his video camera to the police just before the officers
deployed pepper spray, escalating what had been a
verbal altercation into a physical one. They wanted to
argue that had Castaneda's camera not been confiscated,
he would have recorded this pepper-spray incident and
everything that happened afterward.

The district court held that the confiscation of Castaneda's camera and videotape was not evidence of spoliation because it did not involve the destruction of or failure to preserve evidence; at most Castaneda was prevented from *creating* what might have become evidence. This ruling was manifestly correct. Under Illinois law spoliation of evidence is treated as a negligence action. *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 270-71 (Ill. 1995). The Supreme Court of Illinois has explained:

> The general rule is that there is no duty to preserve evidence; however, a duty to preserve evidence may arise through an agreement, a contract, a statute . . . or another special circumstance. Moreover, a defendant may voluntarily assume a duty by affirmative conduct. In any of the foregoing instances, a defendant owes a duty of due care to preserve evidence if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action.

*Id.* at 270-71 (citations omitted).

Actionable spoliation thus occurs only when the duty to *preserve* existing evidence has been breached. Here, although the police seized the Castaneda videotape, they returned it unaltered. That they interrupted Castaneda's filming is not evidence of spoliation; Illinois does not recognize a spoliation claim based on evidence not yet in existence. In contrast, Gudino's videotape was not returned and therefore was properly considered as a basis for the plaintiffs' spoliation claim.

Nos. 08-2467 & 08-2595                                    23

### 2. *Officer Vitalo*

Officer Vitalo was implicated in several claims brought by three of the plaintiffs. Specifically, Daniel Pineda brought a federal excessive-force claim against Vitalo, as well as state-law claims for battery, hate crimes, and intentional infliction of emotional distress. Alejandro Duran likewise alleged that Vitalo used excessive force and violated his right to equal protection, and also asserted state-law claims for battery, hate crimes, and intentional infliction of emotional distress. Finally, Gonzalo Duran alleged state-law claims against Vitalo for malicious prosecution, battery, and intentional in- fliction of emotion distress. These plaintiffs sought to introduce four misconduct complaints from the mid- 1990s accusing Vitalo of verbally abusing minorities, engaging in excessive force, committing false arrest, and falsifying police reports. The plaintiffs argued that these complaints were admissible under Rule 404(b) as evidence of Vitalo's bias, motive, and intent to harass and harm Latinos. The district court excluded this evidence.

We review evidentiary rulings for abuse of discretion. *Manuel v. City of Chicago*, 335 F.3d 592, 595 (7th Cir. 2003). Under Rule 404(b), evidence of other crimes, wrongs, or acts is inadmissible to show propensity, but may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, . . . absence of mistake or accident," or other relevant, nonpropensity purposes. The admissibility of prior bad acts under Rule 404(b) turns on an evalua- tion of the following factors:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not outweighed by the danger of unfair prejudice.

*Treece v. Hochstetler*, 213 F.3d 360, 363 (7th Cir. 2000) (quotation marks omitted).

Vitalo moved in limine to prohibit the introduction of the misconduct complaints, arguing that they were not relevant and were too remote, and also that their prejudicial effect would substantially outweigh any possible probative value. The district court apparently agreed; the judge granted this motion without comment. During the course of the trial, however, the plaintiffs asked the judge to revisit this ruling. They argued that Vitalo opened the door to the introduction of this evidence based on the way he presented his defense to the jury. First, during Vitalo's testimony, his attorney asked him if he "ever use[d] a racial slur toward any of the party goers" on the night of the Durans' party. Vitalo replied, "Absolutely not. I would never do anything like that." Later during that same examination, Vitalo's attorney asked, "What's your wife['s] ethnicity?" Vitalo responded, "She's half Mexican, sir."

This line of questioning was obviously designed to portray Vitalo as tolerant of minorities, so the plaintiffs

asked the judge to reconsider his decision to exclude the misconduct complaints under Rule 404(b). The judge again declined to admit the evidence, saying that "the danger of confusion and of unfair prejudice to the other defendants would outweigh the probative value as to the defendant Vitalo."

The district court has substantial leeway in conducting the Rule 404(b) analysis, and especially in weighing the possibility of prejudice against the probative value of the evidence. "The balancing of probative value and prejudice is a highly discretionary assessment, and we accord the district court's decision great deference, only disturbing it if no reasonable person could agree with the ruling." *Manuel*, 335 F.3d at 596 (quotation marks omitted). While Vitalo's testimony arguably opened the door for admission of the misconduct complaints, "the Rules of Evidence do not simply evaporate when one party opens the door on an issue." *Id.* at 597 (quotation marks omitted). The district court was required to balance the probative value of the long-ago complaints against the prejudicial effect of this evidence; we generally do not second-guess this kind of ruling. This was a very complicated case, with many claims, plaintiffs, and defendants. The introduction of several old, unrelated misconduct complaints against a single officer risked creating a sideshow and sending the trial off track. Furthermore, because the misconduct complaints involved allegations of physical and verbal abuse by Vitalo, there was potential for prejudicial "spillover" effect on all the defendants. The judge did not abuse his discretion by maintaining his original ruling.

### 3. *Officer Peslak*

Several of the federal and state claims were aimed at Officer Peslak, who had an unrelated criminal conviction for a civil-rights violation under 18 U.S.C. § 242, which provides, in relevant part, that

> [w]hoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section[,] . . . shall be fined under this title or imprisoned not more than ten years, or both . . . .

The criminal charge against Peslak arose out of an August 8, 2003 traffic stop. The transcript of Peslak's guilty-plea proceeding reflects that Peslak admitted to grabbing the driver of the car "by the back of the head and hit[ting] his head forcefully against the part of the car where the roof and the top of the door come together." The driver suffered a cut on his right eyebrow that required five stitches to close. Peslak pleaded guilty to one count of using excessive force under color of state law in violation of § 242. He was sentenced to a five-month jail term. Peslak's codefendant in the case, Officer Joseph DeKiel, also pleaded guilty; he said in his own plea agreement that Peslak falsified a police report to indicate that DeKiel was at the scene of this incident when in fact he was not. DeKiel also admitted that at

Peslak's urging, he had testified falsely to corroborate this report.

Peslak moved in limine to exclude evidence of this conviction as unfairly prejudicial. The plaintiffs responded that the conviction was admissible under Rule 609 of the Federal Rules of Evidence but never specified which subsection they were relying on. Rule 609(a)(1) provides that "evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year." Rule 609(a)(2) provides that "evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness."

The plaintiffs seemed to argue that evidence of Peslak's conviction was admissible under either Rule 609(a)(1) *or* Rule 609(a)(2). On one hand, they observed that Peslak's plea agreement acknowledged that Peslak inflicted bodily injury on his victim (a cut on the eyebrow), and so Peslak's crime was punishable by up to ten years. *See* 18 U.S.C. § 242. But they also argued that Peslak's crime involved acts of dishonesty, which sounds like an argument for admissibility under Rule 609(a)(2).

The district court granted Peslak's motion to exclude his civil-rights conviction in an omnibus order that covered many other evidentiary issues. The judge made

Nos. 08-2467 & 08-2595

it clear, however, that this ruling was tentative. The order specifically explained that "[d]uring the course of the trial, the parties may move to reconsider any of these rulings if they believe the evidence warrants reconsideration."

We have held that where the district court makes a tentative or conditional evidentiary ruling before trial, the adversely affected party must renew its objection at trial in order to preserve the issue for appeal. *See Wilson v. Williams*, 182 F.3d 562, 565-66 (7th Cir. 1999) (en banc). The plaintiffs *did* raise the issue of Peslak's conviction at trial, but only argued that it was admissible as a crime of dishonesty. Any argument that Peslak's conviction was admissible under Rule 609(a)(1) is therefore forfeited.[4] The district court properly excluded evidence of Peslak's conviction under Rule 609(a)(2) because the elements of his crime did not include acts of dishonesty or false statements. Although his codefendant's plea colloquy suggests that the two participated in a cover-up, Peslak was convicted of using excessive force under color of state law in violation of § 242, a crime that did not involve acts of dishonesty or false statements.[5]

---

[4] The plaintiffs do not advance a plain-error argument on this point.

[5] There is one final point on this issue. During trial, plaintiffs conducted an examination of Peslak outside the jury's presence with the intention of using Peslak's own testimony about this incident as prior-acts evidence under Rule 404(b). Plaintiffs'

(continued...)

Nos. 08-2467 & 08-2595                                    29

For the foregoing reasons, we VACATE the judgment and REMAND the case to the district court with instruc-

---

<sup>5</sup> (...continued)
counsel asked Peslak if it was true that he prepared false police reports in connection with the incident. At this point Peslak's counsel objected, and the district court put an end to the examination because the plaintiffs' question could have compromised Peslak's Fifth Amendment right regarding self-incrimination. The plaintiffs now contend that Peslak's rights under the Fifth Amendment were not implicated by this line of questioning.

"To be privileged by the Fifth Amendment to refuse to answer a question, the answer one would give if one did answer it (and answer it truthfully) must have *some* tendency to subject the person being asked the question to criminal liability." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663-64 (7th Cir. 2002). Here, Peslak was being asked to affirm that he had prepared false police reports. Among other things, an admission of filing false police reports can give rise to an obstruction-of-justice charge under 18 U.S.C. § 1512(b)(3), *see, e.g.*, *United States v. Carson*, 560 F.3d 566, 573 (6th Cir. 2009), or a similar state offense. The plaintiffs assert that Peslak could not have faced liability for any such admission because he was already serving time on the underlying civil-rights conviction. But Peslak pleaded guilty to a civil-rights violation under § 242, not any additional charge of obstruction. On appeal the plaintiffs do not cite anything in the record that suggests that Peslak's plea agreement prevented him from later being prosecuted for filing false police reports. Accordingly, we find no fault with the district court's decision to halt this line of inquiry to protect Peslak's Fifth Amendment right against self-incrimination.

30                                        Nos. 08-2467 & 08-2595

tions to issue an amended judgment consistent with this opinion. In all other respects, we AFFIRM.